2012-03-17, 2012-03-19, 2012-03-19, March 23, 2012-03-19, May 5, 2012-03-19, May 6, 2012-03-19, May 7, 2012-03-19, May 8, 2012-03-19, May 9, 2012-03-19, May 10, 2012-03-19, May 11, May 8, 2012-03-19, May 9, 2012-03-19, May 10, 2012-03-19, May 9, 2012-03-19, May 10, 2012-03-19, May 9, 2012-03-19, May 8, 2012-03-19, May 9, 2012-03-19, May 10, 2015-04-19, May 8, 2014-05-2017, May 9, 2014-05-2017, May 10, 2014-05-2017, May 9, 2014-05-2017, May 9, 2014-05-2017, May 9, 2014-05-2017, May 10, 2014-05-2017, May 9, 2014-05-2017, May 10, 2014-05-2011, May 9, 2014-05-2011, May providence, U.S. Department of Justice, Office of Justice, there is evidence that the act, or failure to act, was substantially likely to result in an injury, in all probability likely to result in an injury. To your point, specifically, Peters v. Ashtabula, which was a district court case in Ohio, found specifically that it wasn't some injury, but that it had to be a foreseeable injury. So that's the next issue, is that the second prong of deliberate indifference, according to this court, is an awareness on the part of the actor that there are, that there may be, or likely will be, a substantial injury, and that the actor- I guess my question was going to, you're talking about deliberate indifference, and borrowing from this analysis that dealt with the substantive due process. Correct. Over in substantive due process, you've got this, it's got to be an injury that shocks the conscience. So the likelihood, or not, are you looking around me? No, no, I'm not disagreeing with you. So it has to shock the conscience. You could say, well, it's not reckless with respect to injury that shocks the conscience, whereas when you're over under the state law, it just has to be reckless with respect to whether it's some substantial injury. Wouldn't that distinguish the analysis under 1983 from the analysis under the state law? Well, if all that was involved in the analysis under 1983 was the seminal question as to whether there was a constitutional injury, I would absolutely agree with you. But the analysis goes further with that. The analysis is one of essentially a tort analysis, even under 1983. So it's not just that we identify- Right, but it's a tort analysis which leads to a kind of egregious harm that will shock the conscience. Correct. That's the way- Yes. When I read it, it seemed eminently distinguishable. That's why you were saying they're indistinguishable. That's why I'm protesting that. No, I appreciate that. I'm looking at the elements of deliberate indifference as this Supreme Court defined them in Iwalski as being the knowledge and the knowledge on the part of the actor that their act or failure to act will substantially likely result in harm and that then the actor is deliberately indifferent to that consequence. And analogizing that to the O'Toole decision by the Ohio Supreme Court, where the Ohio Supreme Court said, recklessness and wantonness mean that there is a substantial likelihood, in fact, in all that the actor is conscious of that, which is similar to actually drawing the inference, which is what this court indicated in deliberate indifference. And then thirdly, that the actor perversely disregard the fact that he is conscious that his action or failure to act will cause injury. Just as in Iwalski, this court said the third prong would be a callous and reckless disregard of the fact that your action or failure to act would result in injury. So, if you look at the Iwalski definition, Your Honor, of what deliberate indifference is, and you look at the recklessness and wantonness definitions promulgated by the Ohio Supreme Court, I see direct parallels. Now, to your question, I completely understand that when you're looking at deliberate indifference and you're looking at recklessness, you're looking at a body of federal law having to do with 1983 and the United States Constitution. When you're looking at recklessness, you're looking at state law. Interestingly, this court, in Mize v. Tedford, found, in evaluating deliberate indifference, that an opportunity without more, without notice of a criminal propensity, is negligence at best. Now, if we look at... Counsel, I want to stop you, though, and ask you. You've just gone through the list of cases. I'm curious about...get you to this wantonness and recklessness, but looking at the facts of this case, why aren't those met? I mean, in the factual narrative, in the report, you have the actress, the state actress, being put on notice by this alleged offender. Yes, yes. By this person's absences, by this person's alcoholism. There were reports by Mr. Douglas' spouse about activity or things that were at her. And so, with all of that, are you arguing that that was not sufficient to put them on notice and establish a duty to act in that case so that you would trigger the something-to-do process issue? Yes. For two reasons. First of all, the Supreme Court of Ohio has made it clear that in establishing recklessness and wantonness on a record, as opposed to negligence, there must be evidence in the record that the actor was conscious that his decision, his conduct, whatever it was, was substantially likely to cause, or in all probability would cause an injury and disregarded that. For example, in the old tool case, which was the seminal case, one of the seminal cases, I guess, of the three, by the Ohio Supreme Court, involved a social worker who had allowed the child to remain in a setting with their natural parent, and the child ended up being killed. The Supreme Court of Ohio specifically said that in that case, there was no evidence that the social worker was conscious that by leaving the child in that home, it was substantially likely that an injury would occur. But don't you have Kirsker's testimony that you don't allow people to drink in a morgue because someone might harm the bodies? Isn't that evidence of the knowledge of the potential danger? That's a very good question, Your Honor, because frankly, in O'Toole, the court dealt with that. What the court in O'Toole said was, even though the social worker in that case took personal responsibility, he felt really bad that this child had died. And in fact, when you read the case, you see that he wrote on a report, social worker error or worker error as the reason for the child's death. What the Supreme Court specifically said was, no, we're going to avoid emotional ramifications. We're going to avoid 20-20 hindsight. We're going to look at whether or not there is evidence in this record that the actor believed that by acting or failing to act, there would be a substantial risk of harm. And then as a follow-up to your question, the other reason the answer is no is that there is no causal connection between what the plaintiffs allege Kirsker knew or should have known and the injury in this case. But if he testified—well, I guess it depends on how narrowly you define the injury. If you define the injury as whether anyone had noticed that a morgue attendant would sexually abuse a dead body, that is a very, very narrow statement of the risk. How would you respond to a statement of the risk being that someone drunk in a morgue might dishonor or harm the victim? Well, a myriad of responses come to my mind. But first of all, I would say that whether or not that risk can be foreseen by the actor, in which case it has to be foreseen to establish a duty, has to be based on— Well, if it is the generic danger, there is testimony in the record that he foresaw that very danger. Right. And then, of course, he testifies, I told everything. Right. Right, right, right. I don't believe that is exactly accurate in the record that he told everything to Cleveland. There is some question as to what that conversation was. But to your point, a generic concern about possible harm does not satisfy the recklessness standard as promulgated by the Ohio Supreme Court, and it doesn't, frankly, even satisfy a negligence standard. For example, there are no cases that I found that said some generic idea that someone might be drunk means that, as a matter of law, their employer is liable for anything that they may happen to do. That's not the case here. I'm concerned. I would like to get your response to the very We don't allow this. We don't allow drunkenness in the morgue because that creates a risk of harm or dishonoring to the bodies that are there. And— Myron— Isn't that the very issue before us, that he had noticed that there was drinking and that he was not allowed to control or oversee that? I mean, that's the plaintiff's argument. How do you respond to that? I respond Peters v. Ashtabula. Peters v. Ashtabula is an Ohio case where two men were working in a construction aspect in an apartment building, and there were two little girls that were sort of hangers-on around the construction activity. And that—those two little girls  were hanging around. Fast forward a few days. This particular worker was doing work in a particular apartment, and both those little girls were present. This person, that worker, sent one little girl to the store. He took the other little girl into the closet, and he violently raped her. And what that court said, that district court in Ohio, interpreting the Ohio Supreme Court and interpreting Ohio law was, it was foreseeable that two little girls hanging around in a construction site might be injured. But it is a, quote, giant leap, close quote, to say that they were—it was foreseeable that they would have been raped. In answer to your question, Judge Stranz, what has troubled me about this case from the beginning is what I call a couple wild cards. And in this case, the biggest wild card we have is this criminal act. We have a criminal act. We have mens rea that's criminal mens rea. And so if your line of reasoning, or the line of reasoning you suggest, I should say, in all fairness, is accurate, then what we have are employers as insurers for the criminal behavior of their employees, because there is no, none, causal relationship that's been evidenced in this case between drinking or drug abuse and sexual acts on corpses. There is no causal connection between those two. And therefore, if what we have is, I know my, I know my employee drinks, so therefore, I'm going to be an insurer of any criminal conduct that he engages in. Even this Court, and I'll grant you it has been in the context of federal law, has been pretty adamant. And Ohio courts have equally been adamant. For an employer to be liable for, or to foresee, I should say, it's not even liable. It's in the context of foreseeability. For an employer to foresee the criminal act of its employee, there must be knowledge, or constructive knowledge, on the part of the employer of the criminal propensity. There has been an absolute rejection in this Court, as well in state court, that any propensity unrelated causally to the criminal act will suffice. And certainly it will not suffice in the context of recklessness. And I'll draw your attention to the Myrick case, which was No, it just goes so fast for me. It probably doesn't go fast for you, but it goes fast for me. Thank you very much. Good morning. May it please the Court, along with Art Harmon and Joe Hudson and Jennifer Branch, I represent the families of Angel Hicks, Karen Range, and Charlene Epple. I'd like to start talking about just what the constitutional violation is. That's the appeal that we've brought to the Court. And the constitutional violation is executive action, abuse of power, which shocks the conscience and causes harm. Now, I've separately briefed the issue of violations of various expressed rights, but I want to focus on this shocks the conscience, because it can be proven in two steps that were described in City of Sacramento v. Lewis. First, the action of the executive officers needs to interfere with rights that are implicit in the concept of ordered liberty. Broad language, I know, but if any case fits it, we have quiet repose for the dead, respect for the dead, dignity owed to the deceased. Counsel, doesn't this have to be clearly established, though? Yes, and it is. But if you argue from very broad principles, then it's less likely that something's... Would you agree with the proposition that the broader the principle that's supposedly clearly established, the less likely that it's clearly established, the less likely that some particular application of it is clearly established? And understand that we need to have clearly established law for the purposes of qualified immunity. We don't need to have clearly established law for the purposes of county liability, which doesn't have qualified immunity. Which argument are you making first? Which case are you arguing? Well, first let's just establish the constitutional right, and then we can talk about whether it was clearly established or not. And the constitutional right... The constitutional right goes to 1983. Yes, that's right. So I'm not talking for the moment about the state case. Oh, okay. Because I thought you were talking about the 1983 case. I am. It's clear to me if we talk about one case at a time. All right. So you would rather talk about the state case? Whichever one you want to talk about, I just want to make it clear which one I'm talking about. I'm talking about the Section 1983 case. All right. Constitutional violations and the shocks to conscience theory. Right. And that is what Judge Barrett denied. And we're here as the appellants on that claim. Right. And I'm sorry if that was confusing. So under City of Sacramento v. Lewis, you have to show that it interferes with rights Quiet repose for the dead has been true for all recorded history across the world. So if ever there's a right that has any sort of shared universal value, this right of quiet repose and dignity to the dead is one of them. The second step that we're told of in City of Sacramento v. Lewis is that you can prove this through deliberate indifference. And do we have deliberate indifference on these facts? You have Hurster and Cleveland, policymakers for the county, with notice of the risk of harm. And the risk of harm here is notice that there will be disrespect to the bodies in their care. Remember that the county has a dispute. The disrespect, though, is a very broad term. If you state it that broadly, it could include, you know, kissing your girlfriend in the presence of a corpse. Pretty disrespectful. What we mean by that and what the facts of this case support, as a logical disrespect, is touching, manipulating, access, having contact with the bodies without a forensic person. And certainly when you... To move a leg around. Yeah, just for the fun of it. To see whether the joint is moving. I mean, those types of things. Maybe that should be... I'm just wondering whether that fits your grand scheme of ordered liberty. How does it? I mean, I can see how it could. It's just hard for me to see how the law has established that already. Well, remember in City of Sacramento v. Lewis, the court said that these shock to conscience cases should be viewed in the context of their own facts. This is not going to open the floodgates. Let me just mention... No, I understand. But you're stuck with your own definitions. And under your definition, if the person puts a cup of iced tea next to a body and touches it and it isn't medically necessary, he's violated the Constitution. If he does it, not only if he does it, but if someone hires someone who might do that, it violates the Constitution. Which, again, I'm saying maybe that is. But where is the law that says that? I don't agree that that's what would constitute a shock to conscience. So it has to be more than touching a body for a non-purpose. We have here Mr. Kirster saying that if I'm going to let a drunk morgue attendant have exclusive access to the bodies, that that's not right. That I know that that's likely to lead to harm. And when he got notice twice that his morgue attendant was both drunk on the job and coming home smelling like sex, what did he say the second time? He said, don't call back. He told the wife not to call back. If ever there's evidence of deliberate indifference, knowingly wanting to bury your head in the sand because he didn't want to change his course, that is it. And in a case like this, where you have family members unable to go near their loved ones, and for the few days when the coroner has custody, they're totally dependent on the coroner. And remember that part of this concept of ordered liberty includes a long tradition, at least in my mother's family, of family members sitting with the deceased overnight. But all of that, for some judges anyway, is going to strike them as court law, not as substantive process. So you're a little bit caught between wanting to define the harm in very general terms in order to get it established, but to define it in very specific terms in order to get it established, but in very general terms to find the intent. So you want to find that these people were deliberately indifferent to something like disrespect or touching the body in an improper way, but then when we switch to whether it's clearly established, it's got to be more than touching the body. It's got to be violating the body in a way that no one could doubt is a violation of ordered liberty. Are you with me? It seems to me that you're naturally sort of trying to have it both ways. With all due respect, clearly established is only a notion that relates to qualified immunity. And qualified immunity is a personal defense of the individual liability of a person in Cleveland. We don't have to show that it was clearly established in order to have a constitutional violation against the county. And in this case where Kirster himself knew that if he was putting bodies at risk, if he let a drunk person work with them, he has notice of enough harm that he is on notice that there can be a substantial risk of harm to the body. The second part of deliberate indifference is time. Do you have time to make a decision? I do a lot of police misconduct cases, rapidly evolving, not additional. Here they had repeated notice of various problems with work that Douglas was engaged in because of his drinking. And when they got the most dramatic notice from the wife and they told her not to come back, they did nothing. They didn't do drug testing, they didn't have him drop any urine, they didn't stop in on him, they didn't change his schedule, they did nothing. And during that time, right after that time, the bodies of Charlene Appling and Angel Hicks were molested. Counsel, I want to ask a question that just really focuses in on your specific allegations. So putting aside the case law on this issue, why should this court recognize or decline to recognize a substantive due process interest in the dignity and integrity of these bodies? Why should we recognize that substantive due process? Judge Rogers said it sort of sounds like court. I want you to tell me why it's a substantive due process issue rather than just a court issue. It is so outrageous that it does qualify as a shock to the conscience type of fact. And where you have, as the court said in Lewis, this type of conduct by an executive official that dramatically tramples on well-established rights, if you've got deliberate action where they have time to do it right and they choose not to, and then if you're in the context of something like the morgue, and I would suggest to you that dead body pieces are sui generis. I mean, this is not the type of claim that's going to pop up and we'll use it daily. I mean, this is a pretty unique setting. If ever, this isn't the accounting office. If Douglas were going to punch numbers, that'd be one thing. But if ever there is a government duty to, as a supervisor in the workplace, if there's any government duty to do things correctly, it should be at its zenith in a county morgue. How do you, in articulating that relationship between the statement of the right and the shock of the conscience standard, the cases that generally come, or more frequently come, have to do with the defendants themselves engaging in the infanticide. How do you account for the impact on that standard of the fact that this was an attenuated risk? This was not the defendants engaging in the conduct themselves. You've got to step through that loop, and you've got to step all the way into establishing that this risk was so obvious. We have to appraise the facts, given their totality, in a given case under Lewis. And in this case, you've got 16 years of working with Douglas. You've got repeated instances of DUIs being hospitalized. Notice to the supervisors, full knowledge by both of the policymakers, it is not as attenuated as it would be if they had some vague word from a third party that Douglas was a drinker. This is direct evidence that they were going to let their worker into the morgue while he's drunk. And because they knew that letting somebody drunk work with the bodies was likely to lead to harm, that's deliberate indifference to a serious risk of harm. Did they know he was going to have sex with bodies? No. Would we be here if he was manipulating, accessing, photographing? Yes, I was here on Cheshire. You were on Cheshire. Yes, there are other things, even less bad, that you can do to a dead body that would trigger the same right. I hope we never see this again. Was it substantive due process in those cases? It was at the lower court. That issue didn't get to the Sixth Circuit. We were here just on the state law claim, which I would like to turn to on this. On the state law claim, we have immunity with respect to the county, and we have immunity with respect to the individuals. And Judge Barrett correctly decided that none of the immunity protects those defendants in this case. Are the elements of damages going to be different under either state or federal law? Well, there's no punitive damages under state or federal law. Against the individuals, you will have very similar damages. And the punitive damage claim, of course, doesn't exist against the county. I guess one reason I ask that is I know that there was some motions practiced before the motions panel as to whether there was even jurisdiction over your appeal. Are we bound by that? It seems to me maybe our panel might have got it wrong. The panel let the appeal go forward. I understand. And there was a motion, a proper motion, and it was ruled on. I just wonder if it was correct. Because it seems like it's not a separate claim under our precedence applying Rule 54. I know that we didn't ask you to argue this. It's proper for you not to argue it because it was ruled on, but I'm just asking it as a matter of we have to guard our jurisdiction. And it seems to me that if the facts you have to prove and the elements of the damages are the same, then under our clear precedent, we were talking in the last case about how clear the precedent is. The precedent is pretty clear that you can't have a Rule 54 certification in that circumstance. There is certainly judicial autonomy to be served by having both claims. Yeah, but Rule 54 doesn't take into account judicial autonomy. You've got to go into 1292 to take into account judicial autonomy. Rule 54, they've got to be different claims. They can't be the same claims. Categorically, right. Is there different evidence because there's an emotional distress claim? Well, there are emotional distress under each claim, but there's no exhaustion requirement with respect to 1983. I'm not talking about exhaustion. But that's what it amounts to if you say we really don't have to get to the constitutional claim because there's a court claim. You still get to it. You just don't have an interlocutory appeal to be healed when there is not another claim that is not separate that is still proceeding. And there is another that's still proceeding. That's correct. So really, the only concern I have is that we've already ruled the other way. But I'm having a hard time seeing how we have jurisdiction. It might indeed conserve judicial resources, but that's not a standard. Is it? I mean, it's not a standard. Not directly, no. They've got to be separate first. Then you go into this balancing of the factors. They've got to be separate. In our case, we even have this DeWine case where it was kind of like this. It was a Title VII retaliation claim and a state breach of contract claim, but it was the same act. And we said it doesn't matter what the district court says. That's not separate. If the panel would like to revisit that issue, we would ask for an opportunity to brief them so that we're squared up directly on it. That's fair. And assuming that we can go forward then with respect to the argument on the state law claim. Please go forward. I just wanted to raise that because it was on my mind. You need to know what's on my mind. That's totally fair. This is your argument. So if we can help you with that, an additional briefing would be happy to do. With respect to state law immunity under 2744, there's three steps. The first step says you don't get to sue the state or any of the political subdivisions. The second step says if your injury happens on public property at the time of these injuries, then you can sue them. So that brought everybody back in. Under the third step, the county says this is policy, therefore we can't be sued. And the case law is very clear that this isn't policy, that this is simply supervision of employees. Under A-5, which is really the core, the question is whether there's any evidence of wanton and reckless conduct. How do you keep Dr. Cleveland? He's two steps up in the hierarchy. Hirsker, there's a lot of information in the record. But how do you time him? The jury will hear evidence that Hirsker kept Cleveland totally informed. He said so. He says, I told the boss everything were his words. And they'll also hear that Douglas says that he was under the impression in his face-to-face conduct with Cleveland that Dr. Cleveland knew that his problem was drinking. And in that sense, there is evidence that ties him to the very knowledge that Hirsker has, and therefore he can be kept in on the recklessness standard, which is best defined, by the way, in Anderson v. City of Massillon, a case that came out last year, 134 Ohio State 3rd, 380. That was after our briefing, but I supplied the citation to the court. And in that case, they specifically defined all the terms, bad faith, wanton, malicious, reckless. And the definitions they used for reckless and wanton were very clear. And Judge Barrett correctly applied the fact and found that there was evidence of knowledge that there was a duty to protect and evidence that there was a conscious disregard. Your opposing counsel challenges the consistency of that ruling with the district court's other ruling. Do you agree that there is? Oh, I totally agree, which is why I'm here. I think Judge Barrett got it right when he said we only have to show knowledge of a risk of harm under the state law, but he got it wrong when he said we have to show knowledge that Douglass was going to have sex with Bottoms under the federal definition. And we disagree with that. What if, hypothetically speaking, we think he's right on the federal definition instead of using the state law? No, because there are different ways to look at it. Like what? Because the federal definition is wrapped up with what shocks the country. Does it shock the conscience to send a drunk worker into the morgue? I say yes. Maybe the court says no. That still doesn't mean that it disrupts the state law. Thank you. With regard to the constitutional issue and the substantive due process issue, I would just assert my argument in my brief that this court has held that before the court considers whether there is a substantive or procedural due process claim, there has to be a violation of a liberty or property right. There have been neither in this case, so I don't think that we reach that question according to the case law of this court. What about the argument that you don't, you can skip directly to the shocks the country is facing? My understanding that this court has, at least in two opinions that I cited in my brief, rejected that premise and that I believe it was Waschel, if I'm not mistaken, where the court found that there needs to be a violation of the Constitution before we reach the shock to conscience. In fact, this court in Braley gave the policy sort of construct or the judicial restraint argument for why that is so in the lack of definitive parameter for that kind of analysis. If we were going to recognize some sort of shock or conscience standard, it wouldn't be too hard to say that for the purposes of that standard there was a property interest in the bodies of your relatives. Really? Yeah. So maybe we should just go to whether it shocks the country. Well, I can't control what you find, but I think this court has rejected that you can just find a property interest. That was for a procedural due process. Well, again, I'm saying that unless there's a property right or a liberty interest, there is no substantive or procedural due process question. And I thought the court just said to me, I think we could just say there is a property interest for purposes of substantive. You would just say it. You would just say what shocks the conscience? What shocks the conscience is that you do this to somebody? They suffer the injury. Yes, this court could. It's sort of a formal way of parsing out the interest to say, well, it's not shocking because it's not your property. Yes, I kind of just tend to use the constitutional parameter as my threshold. You're right. It has to be like liberty or property or it doesn't fit into the clause. Correct, correct. And that's my only point. Of course it does. But the definition of that for substantive due process is not so controlled as the definition of that for procedural due process by the state. That was not my reading of your precedent, but I'll defer to you on that, obviously, Your Honor. Mr. Gerhardstein suggested that the district court properly put forth the definitions of recklessness and wantonness. I believe that he did. What he didn't do was apply them according to the Supreme Court's, the Ohio Supreme Court's direction. In Myrick, which was the first district court of appeals case, the court on the pleadings dismissed the case on the basis of recklessness and wantonness because there was no evidence in the record that the 911 operator believed that her instructions were substantially likely to result in harm. We reject. But in 2008, didn't Ohio define recklessness as conduct committed with knowledge or with reason to know a fact that would cause a reasonable person to realize that the conduct in question creates an unreasonable risk that is greater than your net worth? And that's the statement. Yes, that's in Anderson. And also in Anderson, if the court would note, the Supreme Court cites favorably Fabre and O'Toole. In O'Toole, the Supreme Court went further to embellish that definition to say a perverse disregard of a known risk. In Rankin, the Supreme Court said recklessness is a high standard. So I'll submit to you that in Anderson the court was reiterating its definition, but it also in that decision favorably cited Fabre and O'Toole. So I don't believe that Anderson really tells us anything that a reading of Fabre and O'Toole in Rankin don't tell us. I would just like to end with a couple of references to the record. Mr. Gerhardstein, throughout the litigation of this case, has noted the knowledge that Kersker and or Cleveland supposedly had about the alcohol and drug use. There are no facts in this record that indicate Cleveland or Kersker had any idea of drug use. With regard to the sexual activity in the morgue and the drinking that Chavez reports supposedly in 86 or 87, how that relates to the 82 range case causally is not apparent to me. But this is the testimony in her deposition, Ms. Chavez says. And so he came home and he was smelled of alcohol and he smelled like sex with a woman. This is page ID 444 and 445. And do you know, is that when you picked him up? No. This particular time that I'm referring to, that I told him he smelled like it was, he drove that day. And when he came up, I talked to Kenny before he left work. And he called me and said, Do you need anything? Do you want me to stop and pick up anything? So I know that Kenny was at work. So she knew that Kenny was at work because Kenny called her from work. This is the same woman who testified she never really knew if he was at work or not because Kenny would just as soon lie to you as tell the truth. So this is the testimony that's in the record. So we categorically reject that Mr. Kersker had knowledge that there was alcohol and drug use and sexual activity in the morgue. And we categorically reject that this record supports that. What we suggest is the record supports, as Judge Rogers put in one of his dissenting opinions, particularly in Cheshire, was entirely reasonable that Bernard Kersker would trust Douglas based on his knowledge of his work performance. And Mr. Kersker said this in his deposition. At the time, he was probably one of my few regular guys. He and Ben were my mainstays. He kind of did a very good job. I was pleased with him. And he'd do anything around the building that you'd ask him to do. He never argued with you. He was a good worker. I trusted him. I grew to rely on him. I really trusted him. And that's really, really what upsets me when I heard this because I thought, How could that guy betray my trust? Mr. Gerhardstein's argument is one of negligence, not recklessness. Thank you. Thank you very much for your patience. It was a pleasure. Thank you. Thank you. Do you have a final word, sir? Actually, what the opposing counsel was just talking about is the argument we need to have. We'd ask that you would affirm the district court on the state law immunity decision and give these families a trial against the county cursor in Cleveland on the state law court claim, that you reverse the district court on the civil rights ruling and remand for trial on those claims as well. The civil rights claim, I think we should go ahead, get a ruling that it is viable, that it is triable, and it is well-grounded. Even in this court's precedent, if you look at the case of Stemler, another substantive process. In that case, the police officers took a drunk woman, forced her into the drunk truck driver's van, and they didn't know then whether she was going to be raped by him, beat up by him, treated well by him, or cracked. It turns out he cracked her. This court held that that's a substantive process because they had time to deliberate how to deal with this drunk woman, and they chose to footer it in harm's way. And they didn't know exactly what harm it would be, just like Hursthurst and Cleveland didn't know exactly what harm it would be, but they knew what they were doing. And similarly, in this case, we'd ask that that same analysis supports the substantive process against the county. Thank you. Thank you, Mr. President. Case to be submitted.